UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
02 MAR -5 PM 12: 5
U.S. DISTRICT COURT
N.D. OF ALABAMA

DANIEL L. BUFORD; and )
MARCIE D. BUFORD )
　　　　　　　　　　　　　　)
　　　　Plaintiffs, )
　　　　　　　　　　　　　　)
vs. )　Civil Action No.: CV-99-S-3445-S
　　　　　　　　　　　　　　)
WAL-MART STORES, INC., )
　　　　　　　　　　　　　　)
　　　　Defendant. )

ENTERED
MAR - 5 2002

## MEMORANDUM OPINION

　　　　This action was tried to a jury during August of 2001. Plaintiffs Daniel L. and Marcie D. Buford, who are brother and sister, respectively, filed suit against defendant Wal-Mart Stores, Inc. under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981, claiming that defendant had discriminated against each of them on the basis of their race (African-American). The jury returned verdicts in favor of plaintiffs for the aggregate amount of $366,040 in compensatory and punitive damages. Judgments in accordance with the jury's verdicts were entered on the court's minutes by the clerk on September 13, 2001.[1] Plaintiffs moved the court to award them an additional amount as attorneys' fees and costs on September 27, 2001.[2] Five days later, on October 2, 2001, plaintiffs filed a motion seeking equitable relief amounting to reinstatement and/or front pay.[3] This court subsequently entered an order granting defendant's motion[4] to stay the entry of the judgment, pending defendant's appeal to the Eleventh Circuit Court of Appeals.[5] The Eleventh Circuit

---

　　　　[1] *See* "Amended Clerk's Court Minutes" entered on September 13, 2001 (doc. nos. 57 & 58).

　　　　[2] *See* "Plaintiffs' Motion for the Award of Attorney's Fees and Costs" (doc. no. 61).

　　　　[3] *See* "Plaintiffs' Post-Trial Motion for Reinstatement and/or Front Pay" (doc. no. 64).

　　　　[4] *See* doc. no. 68 (defendant's "Motion of Stay of Judgment Pending Appeal") and doc. no. 70 (handwritten order on face of motion — "Granted" — entered on October 30, 2001).

　　　　[5] *See* Order (doc. no. 70).



ultimately dismissed defendant's appeal for want of jurisdiction, however, citing the need for this court to resolve plaintiffs' outstanding claims for equitable relief.[6] The court accordingly now addresses plaintiffs' outstanding post-trial motions for the award of attorney's fees and costs (doc. no. 61) and reinstatement and/or front pay (doc. no. 64).

## I. DISCUSSION

### A. Plaintiffs' Application for Attorney's Fees and Costs

Plaintiffs seek attorneys' fees in the aggregate amount of $48,730, and payment of costs incurred in the amount of $3,186.16, pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 2000e-5(k).[7] *See Evans v. Jeff D.*, 475 U.S. 717, 106 S. Ct. 1531, 89 L. Ed. 2d 747 (1986) (right to recover fees belongs to the party, not the attorney). Title VII grants discretion to the trial court to "allow the prevailing party ... a reasonable attorney's fee ... as part of the costs...." 42 U.S.C. § 2000e-5(k). A "prevailing party" is one who succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *see also, e.g., Farrar v. Hobby*, 506 U.S. 103, 111, 113 S. Ct. 566, 573, 121 L. Ed. 2d 494 (1992) ("[T]o qualify as a prevailing party, ... [w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.").

The Eleventh Circuit defined the method for determining an award of attorney's fees in *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988). The district court must multiply the number of hours reasonably expended by a reasonable hourly rate to arrive

---

[6] *See* doc. no. 76 (certified copy of Eleventh Circuit's order in No. 01-16093-B, dismissing appeal for lack of jurisdiction).

[7] *See* Plaintiffs' Motion (doc. no. 61) ¶¶ 3-4.

2

at an amount called the "lodestar." *Id.* at 1299. The party applying for attorney's fees is responsible for submitting satisfactory evidence to establish (1) that the requested hourly rate is in accord with prevailing market rate, and (2) that the total number of hours expended by the attorney in the prosecution of a plaintiff's claims is reasonable. *See id.* at 1303. The district court then must determine whether any portion of the lodestar should be adjusted upwards or downwards. *Hensley,* 461 U.S. at 433-34, 103 S.Ct. at 1939-40. The court is guided in that process by twelve factors originally articulated by the former Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[8] Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of professional relationship with the client; and, (12) awards in similar cases. *See id.* at 717-19.

1. **Reasonable Hourly Rate**

The first step in calculating the "lodestar" is to ascertain a reasonable hourly rate for plaintiffs' attorneys. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S.Ct.

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

3

1541, 1547 n.11, 79 L.Ed.2d 891 (1984)). "The rate of attorney's fees is that of the place where the case is filed." *Cullens v. Georgia Department of Transportation*, 29 F.3d 1489, 1494 (11th Cir. 1994) (citation omitted). Plaintiffs filed this action in Birmingham, Alabama, which is located in Jefferson County, Alabama, and thus within the Southern Division of this court. *See* 28 U.S.C. § 81(a)(3) (1994) (listing counties comprising the Southern Division of the United States District Court for the Northern District of Alabama). Jefferson County, Alabama — or, more specifically, Birmingham, Alabama — is therefore the "relevant legal community." *Norman*, 836 F.2d at 1299; *see also, e.g., American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 436-37 (11th Cir. 1999) (examining rates for Atlanta-area attorneys in case filed in United States District Court for the Northern District of Georgia); *Duckworth v. Whisenant*, 97 F.3d 1393, 1396-97 (11th Cir. 1996) (considering prevailing market rate in Atlanta for case filed in United States District Court for the Northern District of Georgia); *Loranger v. Stierham*, 10 F.3d 776, 781 (11th Cir. 1994) (examining rates of attorneys in the "Dade County area" in case filed in the United States District Court for the Southern District of Florida); *Perkins v. Mibile Housing Board*, 847 F.2d 735, 737 (11th Cir. 1988) (examining rates for attorneys in the Mobile, Alabama area in case filed in the United States District Court for the Southern District of Alabama). *But see Lattimore v. Oman Construction*, 714 F. Supp. 1178, 1179 (N.D. Ala. 1988) ("The relevant market for legal services is the Northern District of Alabama, consisting of the thirty-one northernmost counties of the state") (examining, however, rates of the Birmingham Bar Association in case filed in the Southern Division of the United States District Court for the Northern District of Alabama), *aff'd*, 868 F.2d 437 (11th Cir. 1989); *Knight v. State of Alabama*, 824 F. Supp. 1022, 1027 n.1, 1031-32 (N.D. Ala. 1993) (noting, in case filed in Southern Division of United States District Court for the Northern District of Alabama, that the

4

relevant legal community is the entire Northern District of Alabama, but nevertheless examining the rates of Birmingham, Alabama attorneys).

The movant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates, and may meet this burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence[9] of reasonable rates. *See Norman*, 836 F.2d at 1299. The court also may consider the *Johnson* factors "to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered the court." *Id.* at 1299-1300.

The court seldom is presented one figure as a prevailing market rate. One factor complicating the determination is the fluidity of attorneys' rates in the relevant market. In addition, the movant ordinarily asks for rates approximating the highest charged in the community, whereas the non-movant generally submits evidence of the lowest rate charged in any part of the community. *Id.* at 1300. In this case, however, defendant does not contest plaintiffs' demand for attorney's fees and costs.

Plaintiffs have requested the following attorneys' fees and costs:[10]

| ATTORNEY | HOURS | RATE | AMOUNT |
|---|---|---|---|
| John D. Saxon | 144.4 | $250.00 | $36,100.00 |
| Tammy C. Wooley | 27.0 | $200.00 | $5,400.00 |
| Symantha C. Thomas | 55.2 | $165.00 | $9,108.00 |
| **TOTAL FEES** | | | **$50,608.00** |

---

[9] "The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Norman*, 836 F.2d at 1301.

[10] Plaintiffs have increased the amount of attorney's fees initially requested in their motion to account for the time expended in the case during January and February of 2002.

5

| TOTAL COSTS | N/A | N/A | $3,415.73 |
| TOTAL | | | $54,023.73 |

Plaintiffs have offered the affidavit of Andrew C. Allen, a partner in the Birmingham, Alabama law firm of Whatley Drake, L.L.C., who routinely handles employment discrimination litigation of the kind at issue here.[11] Allen asserts that, because he has litigated numerous cases in this court under 42 U.S.C. §§ 2000e and 1981, he is "aware of the expenditure of time which would be reasonable for a prevailing plaintiff in pursuit of a Title VII or Section 1981 action," and is also "aware of the local prevailing rates for attorneys for the type of work for which movants herein seek an award."[12] Allen avers that, based on his review of the fee petition submitted by plaintiffs' counsel, the time expended and the rate charged are reasonable and consistent both with the amount of time such litigation requires and the attorneys' respective levels of experience.[13]

The most important factor in determining a lawyer's reasonable fee, and one cited in *Johnson*, is the skill of the attorneys involved. The court in *Norman* suggests that "skill" incorporates the notions of organization,[14] efficiency,[15] knowledge,[16] and persuasiveness.

> Once a district court has winnowed down the comparables offered by the parties to those which are relevant to the facts and circumstances of the case, the client, and the attorney before it, this court would still expect that there might be a range in prevailing market rates. That range is accounted for almost always by experience, skill and reputation. A closer analysis suggests that reputation and experience are usually only proxies for skill, which in a rational economic environment is the

---

[11] *See* Plaintiffs' Submission (doc. no. 63), Ex. B (Allen Affidavit) ¶ 3.

[12] *Id.*

[13] *See id.*

[14] "Organization means that discovery devices and motions are thought out and not utilized in a random and erratic way or for the mere purpose of going through established routines." *Norman*, 836 F.2d at 1301.

[15] "Efficiency means doing well just what ought to be done and doing it in a minimum of time." *Norman*, 836 F.2d at 1301.

[16] Knowledge entails "knowledge of trial practice and knowledge of substantive law." *Norman*, 836 F.2d at 1301.

ultimate determinant of compensation level.

*Norman*, 836 F.2d at 1300.

A district court judge, having observed the trial of a case, also may appropriately make his or her own determination of a particular advocate's skill level in setting a reasonable fee for that attorney.[17] When making such an observational evaluation, this court recognizes that, sometimes, the outcome of a case turns less on the strength of the facts than on a lawyer's skill in presenting those facts.

> Some clients prevail only because of the compelling merit of their case and in spite of their attorney's efforts to communicate a position. In other cases, usually close ones, the better advocate may actually sway the outcome on occasion. In the usual case, both the merits and the advocacy control the outcome. The measure of good advocacy is that the client's best positions are advanced clearly, crisply and compellingly.

*Id.* at 1301. The court concludes that plaintiffs' attorneys' rates are reasonable, especially in light of the attorneys' experience level and exemplary performance at trial, and because defendant does not contest those rates.

## 2. Hours Reasonably Expended

The second step in computing the lodestar requires a determination of the number of hours reasonably expended by counsel. Attorneys are required to exercise "billing judgment." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

> "[B]illing judgment" means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis.

---

[17] *See Norman*, 836 F.2d at 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.").

7

*Norman*, 836 F.2d at 1301.

The court also is charged with redacting redundant hours. *See id.* "[E]xcessive, redundant, or otherwise unnecessary" hours should be excluded from the amount claimed. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939-40. Nevertheless, "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1302 (citing *Johnson v. University College of University of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489 (1983)).

Finally, the district court may deduct time spent on discrete and unsuccessful claims. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. However, such reductions, if warranted at all, are more appropriately considered after the court ascertains the lodestar. *See id*, 461 U.S. at 436-37, 103 S.Ct. at 1941 (explicitly stating that a court could simply reduce the award to account for the plaintiff's limited success instead of eliminating hours specifically expended on unsuccessful claims); *accord Popham v. City of Kennessaw*, 820 F.2d 1570, 1581 (11th Cir. 1987). The Eleventh Circuit holds that, "[i]f the court disallows hours[,] it must explain which hours are disallowed and show why an award of these hours would be improper." *Norman* 836 F.2d at 1304 (citations omitted).

Thus, this court proceeds with a review of the reasonableness of the hours claimed, considering whether any are excessive, redundant, or otherwise unnecessary.

    a.    **John D. Saxon**

Plaintiffs seek compensation for 144.4 hours of work by John D. Saxon. Upon review of his time records, no entries appear duplicative of work performed by co-counsel. The court accordingly concludes that plaintiffs' request for compensation is reasonable.

### b. Tammy C. Wooley

Plaintiffs seek compensation for 27.0 hours of work by Tammy C. Wooley. Upon review of her time records, no entries appear duplicative of work performed by co-counsel. Thus, this court concludes that plaintiffs' request for compensation is reasonable.

### c. Symantha C. Thomas

Plaintiffs seek compensation for 55.2 hours of work by Symantha C. Thomas. Upon review of her time records, no entries appear duplicative of work performed by co-counsel. Accordingly, the court concludes that plaintiffs' request is reasonable.

## 3. Lodestar Computation of Attorney's Fees

| ATTORNEY | REASONABLE HOURS | REASONABLE FEE | TOTAL |
| --- | --- | --- | --- |
| John D. Saxon | 144.4 | $250.00 | $36,100.00 |
| Tammy C. Wooley | 27.0 | $200.00 | $5,400.00 |
| Symantha C. Thomas | 55.2 | $165.00 | $9,108.00 |
| **TOTAL** | | | **$50,608.00** |

## 4. Adjustments to the Lodestar

After determining the lodestar amount, the court should adjust the final fees awarded to reflect the results obtained through litigation. *Hensley*, 416 U.S. at 434, 103 S.Ct. at 1939-40. The Eleventh Circuit provides the following guidance:

> If the result was excellent, then the court should compensate for all hours reasonably expended. ... If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. ... In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some portion. ... A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. ...

9

> Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. ... It is improper to make the reduction based on a simple ratio of successful issues to issues raised.... The vindication of a constitutional right is important even if only a small amount of money is involved.

*Norman*, 836 F.2d at 1301 (citations omitted).

The adjustment of attorney's fees is within the discretion of the district court. *Norman*, 836 F.2d at 1304. The amount of recovery accurately reflects prevailing hourly rates in the Northern District of Alabama, and has been reviewed in the interest of eliminating duplicative hours. The court accordingly concludes that a downward adjustment in the lodestar is unwarranted.

The court now must determine whether an upward adjustment is warranted. Even if the results obtained are exceptional — and they were — no enhancement is permissible, unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed. *See Blum*, 465 U.S. at 899, 104 S.Ct. at 1549. Without question, plaintiffs' counsel rendered extraordinary service in this case. Mr. Saxon, in particular, was extremely competent and persuasive.

Further, in the rare case, enhancement may be appropriate where there is a risk of non-recovery of a fee in the case, if it is shown that such enhancement is necessary to assure the availability of counsel. *See Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 734, 107 S.Ct. 3078, 3091, 92 L.Ed.2d 439 (1986) (O'Connor, J., concurring).

Finally, the court must consider the issue of delay in the receipt of payment by counsel for the prevailing party. "[W]here there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates." *Norman*, 836 F.2d at 1302 (citing *Gaines v. Dougherty County Board of Education*,

775 F.2d 1565, 1572 n.14 (11th Cir. 1985)). Despite their discretion, district courts should consider an enhancement of counsel's fees to account for delay in payment because

> [s]uch delay obviously dilutes the eventual award and may convert an otherwise reasonable fee into an unreasonably low one. As a result, district courts should take into account inflation and interest, perhaps by adjusting the contingency factor to reflect delay, not just contingency, or perhaps by compensating at current, not historical rates. ... *We do not prescribe any set method for correcting for delay in payment, but some form of correction must be undertaken.*

*Johnson v. University College of the University of Alabama in Birmingham*, 706 F.2d 1205, 1210-11 (11th Cir. 1983) (emphasis supplied) (considering appeal of attorney's fees award in Title VII action). Here, defendant has made its intent to delay payment of the jury's verdict and concomitant fees and costs abundantly clear, and further has delayed payment of fees and costs for five months by virtue of its premature appeal.[18] Defendant unquestionably plans to return to the same well following the entry of this order. It is the opinion of this court, therefore, that Mr. Saxon is due to have his firm's fees enhanced in order to compensate adequately for defendant's delay in remitting payment to plaintiffs' counsel. Plaintiffs' counsel is entitled to an increase in fees consistent with the legal rate of post-judgment interest of 2.60%, *see* 28 U.S.C. § 1961, dating from the time of the clerk's minute entries of judgment in accordance with the jury's verdicts (September 13, 2001) through the date of this memorandum opinion and accompanying order, as follows:

| ATTORNEY | ORIGINAL FEE REQUEST | FEE AWARD (WITH INTEREST) |
|---|---|---|
| John D. Saxon | $36,100.00 | $36,544.87 |
| Tammy C. Wooley | $5,400.00 | $5466.55 |
| Symantha C. Thomas | $9,108.00 | $9220.24 |

---

[18] *See* October 22, 2001 Notice of Appeal (doc. no. 67).

| TOTAL FEES: | $50,608.00 | $51,231.66 |

### B. Plaintiffs' Request for Costs

The Eleventh Circuit has noted that "the factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorney." *Dowdell*, 698 F.2d at 1190. Accordingly, the court went on to hold in *Dowdell* that

> with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs. ... [T]he standard of reasonableness is to be given a liberal interpretation.

*Id.* at 1192 (citations omitted).

Plaintiffs have requested reimbursement for costs incurred as a result of litigation of their Title VII claims. This court's September 13, 2001 Bill of Costs instructed the clerk of the court to tax against defendant costs in the amount of $3,186.16.[19] Plaintiffs already have recovered those costs, but also request an award of costs over that amount to account for those costs incurred in January and February of 2002, bringing the total costs requested to $3,415.73. Accordingly, the court grants plaintiffs' motion to the extent of the costs not yet recovered, or $229.57.

### C. Plaintiffs' Request for Equitable Relief

Plaintiffs' motion does not cite any Federal Rule as a basis for the relief requested. The court could construe the motion as invoking Federal Rule of Civil Procedure 59(e), which authorizes a motion to alter or amend a judgment after the judgment has been entered. *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 11 *Federal Practice and Procedure* § 2810.1, at 119 (Civil 2d

---

[19] *See* Amended Clerk's Court Minutes (doc. no. 57).

1995). Rule 59(e) requires that motions to amend or alter a judgment be filed within ten days after entry of the judgment. *See id.*, § 2812, at 136 n.3 (citing cases). If the court construes plaintiffs' motion under Rule 59, the motion is untimely, and this court is without jurisdiction to consider it. *See Glass v. Seaboard Coast Line Railroad Company*, 714 F.2d 1107, 1109 (11th Cir. 1983) (holding that Rule 59's "10-day period is jurisdictional, and cannot be extended in the discretion of the district court") (citations omitted). This is because judgments in accordance with the jury's verdicts were entered upon the minutes of this court by the clerk on September 13, 2001.[20] Plaintiffs did not move this court to grant equitable relief in the form of reinstatement and/or front pay until October 2, 2001.[21]

The Supreme Court has stated that Rule 59 is properly invoked "only to support reconsideration of matters properly encompassed in a decision on the merits." *White v. New Hampshire*, 455 U.S. 445, 450-51, 102 S. Ct. 1162, 1165-66, 71 L. Ed. 2d 325, 330-31 (1982). The Court further suggested that Rule 59 motions typically relate to compensation for the injury giving rise to an action rather than matters "uniquely separable from the cause of action to be proved at trial." *White*, 455 U.S. at 451, 102 S. Ct. at 1166. Similarly, the Eleventh Circuit has held that "Rule 59(e) applies only when a motion seeks reconsideration of substantive issues resolved in the judgment and not when a motion raises exclusively collateral questions regarding what is due because of the judgment." *Osterneck v. E. T. Barwick Industries*, 825 F.2d 1521, 1526 (11th Cir. 1987), *aff'd sub nom. Osterneck v. Ernst & Whinney*, 489 U.S. 169, 109 S. Ct. 987, 103 L. Ed. 2d 146 (1989). Thus, a timely Rule 59 motion urges a court to "reconsider its holdings of law and fact

---

[20] *See* "*Amended* Clerk's Court Minutes" (emphasis supplied) entered on Sept. 13, 2001 (doc. nos. 57 & 58); *see also* the "Clerk's Court Minutes" entered on Sept. 11, 2001 (doc. nos. 55 & 56).

[21] *See* Plaintiffs' Post-Trial Motion for Reinstatement and/or Front Pay (doc. no. 64).

to determine whether its judgment was correct." *Gordon v. Heimann*, 715 F.2d 531, 538 (11th Cir. 1983).

Plaintiffs' motion is devoid of any explanation for the delay in filing the motion, although plaintiffs anticipated seeking such relief: they included a demand for reinstatement and/or front pay in their pre-trial order.[22] Plaintiffs fail to offer relevant case law that would permit this court to extend the filing deadline, or to imply a timely-filed Rule 59 motion from plaintiffs' pre-trial order request for equitable relief. During oral argument on the present motions, conducted in Birmingham, Alabama on February 20, 2002, plaintiffs pointed this court solely to the Supreme Court's decision in *Albemarle Paper Co. v. Halifax Local No. 425, United Papermakers and Paperworkers, AFL-CIO*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Although plaintiffs use *Albemarle Paper Co.* to argue that the purpose of Title VII is to "make persons whole for injuries suffered on account of unlawful employment discrimination," *id.* at 418, 95 S.Ct. at 2372, the language cited by plaintiffs, although correct, is inapposite in a fundamental respect. This is because "Federal Rule 6(b) *forbids* a court to enlarge the time within which a Rule 59(e) motion may be served." *Hertz Corporation v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1128 (11th Cir. 1994) (emphasis supplied). Accordingly, plaintiffs' motion is untimely and this court has no jurisdiction to consider it.

DONE this 5th day of March, 2002.

_____
United States District Judge

---

[22] *See id.* ¶ 1.